# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1668

_____

| | | |
|---|---|---|
| Johnson Uchenna Ezeagwu, | * | |
| | * | |
| Petitioner, | * | |
| | * | Petition for Review of an Order |
| v. | * | of the Board of Immigration |
| | * | Appeals. |
| Michael B. Mukasey, Attorney | * | |
| General of the United States, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: March 13, 2008
Filed: August 8, 2008 (Corrected: 10/14/2008)

_____

Before BYE, SMITH, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Johnson Uchenna Ezeagwu petitions for a review of a decision of the Board of Immigration Appeals (BIA) denying his application for asylum and withholding of removal and for relief under Article III of the Convention Against Torture (CAT). We deny the petition.

I.

Ezeagwu is a native of Nigeria. He entered the United States as a visitor for business on October 19, 1996, and again on July 26, 1997. Ezeagwu married Carolyn Roach, a citizen of the United States, 46 days after his second entry into the country. On September 30, 1997, he petitioned to have his status adjusted to that of a lawful permanent resident, pursuant to 8 U.S.C. § 1154(a)(1). After Ezeagwu traveled to Nigeria in 2004, he was granted advance parole back into the United States on the basis of his pending petition for adjustment of status. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(c), (f). In September 2004, the United States Citizenship and Immigration Services notified Ezeagwu and Roach that it would deny the petition on the ground that the couple had entered into the marriage for purposes of circumventing the immigration laws. 8 U.S.C. § 1154(c). The petition was formally denied on February 22, 2005.

On September 3, 2004, the Department of Homeland Security (DHS) served Ezeagwu with a notice to appear, alleging that he was deportable as an alien present without a valid entry document. *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I). The notice was filed with the immigration court on March 22, 2005. On July 20, 2005, the DHS notified Ezeagwu of an additional charge that he was removable as an applicant who sought to procure admission to the United States by misrepresenting a material fact, i.e., that his marriage was bona fide. *See* 8 U.S.C. § 1182(a)(6)(C)(i). This notice was filed on October 19, 2005. Ezeagwu conceded removability on the first charge, but on November 23, 2005, he filed an application for asylum to avoid removal. On his application, he checked boxes stating that he had experienced harm or mistreatment in Nigeria, and that he feared harm or mistreatment if he were returned, but also that he had never been "arrested, detained, [or] interrogated" in his home country. Ezeagwu did not elaborate on the allegations in his initial application.

On September 12, 2006, almost 10 months after filing his initial application, Ezeagwu resubmitted his asylum application with an accompanying affidavit. Ezeagwu averred that while attending the University of Lagos, he participated as a student leader in the "Association Internationale des Etudiants en Sciences Economiques et Commerciales" (AIESEC). Ezeagwu said he was interviewed by a reporter for *Vanguard*, a Nigerian newspaper, after he helped to organize an AIESEC conference in 1986. Ezeagwu claimed that his comments were published in a front page article, that the ruling government of Nigeria was displeased by the remarks, and that the the State Security Services (SSS) were dispatched to look for him. Ezeagwu alleged that he then went into hiding in Nigeria. Ezeagwu further claimed that the SSS visited his home, took documents, and traumatized his then-wife and children. Ezeagwu stated that his fear of the SSS prompted him to move his family to the United States in 1996.

Ezeagwu also claimed that he was detained in the airport after returning to Nigeria in 2004 to visit his sick mother, and that he was interrogated by an SSS agent "for hours." He stated that the SSS eventually allowed him to leave the airport, but that SSS officers came looking for him during his stay. Ezeagwu alleged that the SSS ransacked his parents' home after he left the country.

At a hearing before an immigration judge, Ezeagwu testified that the *Vanguard* article bore the title "Student Leader Challenge [sic] Nigerian Military Government." Ezeagwu again emphasized that the SSS came looking for him after the publication of this article, but he also testified that he continued to attend school, and achieved a bachelor's degree in 1989 and a master's degree in 1992. After graduating, Ezeagwu worked for Xerox for five years, and then opened a successful business of his own, often traveling to the United States. Ezeagwu testified that he never had difficulties obtaining visas for his travels.

Although Ezeagwu's affidavit included no mention of detention by the Nigerian government, he testified that in 1996, the SSS came to his place of work and took him to the Algonbon Close Detention Camp for three days. At first, Ezeagwu claimed that this occurred in 1986, but then changed the date to 1996 during questioning by the IJ. Ezeagwu alleged that SSS officials touched his genitals with a broom and fondled him while he was in detention. He testified that he was released only because of his father's connections with the SSS. Ezeagwu also testified that it was difficult for him to get government contracts when he returned from the United States in October 1996. He said that he eventually closed his business in 2003 because it was not running well in his absence.

On cross examination, Ezeagwu added that he was detained for two or three days in 1986, after the publication of the *Vanguard* article. When the IJ asked Ezeagwu why the detention was not mentioned in the affidavit or in his earlier testimony, Ezeagwu claimed that he had forgotten about it. Ezeagwu also testified that he was arrested in 1986 or 1987 for demonstrating in front of the student union. This incident was not discussed in Ezeagwu's affidavit.

The IJ denied Ezeagwu's application for asylum and his request for withholding of removal. Commenting on credibility, the IJ remarked that there were "some major problems" with the statement offered by Ezeagwu. The IJ found that Ezeagwu's affidavit was inconsistent in describing dates of events, and found it troubling that the affidavit failed to make any mention of Ezeagwu's alleged detentions. The IJ also viewed Ezeagwu's activities in Nigeria – continuing to attend a state-run school and traveling to and from the country on numerous trips between 1990 and 1997 – as inconsistent with his claims to be an "opponent of the government," and thought his efforts to return to Nigeria in 2004 and 2005 did not "comport with an individual who feels that he will be detained, tortured or killed if returned to his country." In view of these "problems," the IJ said he could not find that Ezeagwu presented a credible claim.

The IJ concluded by noting that Ezeagwu had failed to provide any corroborating evidence, such as a copy of the *Vanguard* article, evidence of his detentions, or objective evidence of his involvement in political organizations, to support the "core elements" of his claims. In light of what the IJ viewed as contradictory evidence concerning Ezeagwu's travels, the IJ believed the corroboration was important to establishing credibility. The IJ found the same credibility issues to be fatal to Ezeagwu's claim under the Convention Against Torture, and further noted that the former military regimes in Nigeria had been replaced by an elected government. In sum, the IJ declared that this was a "weak case for relief."

The BIA dismissed Ezeagwu's administrative appeal. It first concluded that the asylum application was untimely under 8 U.S.C. § 1158(a)(2)(B). The BIA also found that the IJ's adverse credibility finding was not clearly erroneous. It cited Ezeagwu's failure to mention his alleged detentions and beating in his asylum application or written statement, his assertion that he simply "forgot" to mention the detention and did not want to "brag about" his association with the SSS, and the implausibility of Ezeagwu's ability to make numerous trips in and out of Nigeria if he really was at risk of persecution. The BIA also found no error in the IJ's conclusion that Ezeagwu failed to corroborate his claim adequately. The BIA noted that "[t]he weaker the applicant's testimony, the greater the need for corroborative evidence," and that a reasonable explanation for the absence of corroborating evidence should be provided where it is reasonable to expect such evidence.

The BIA also rejected Ezeagwu's claim that he received ineffective assistance of counsel, and that counsel's alleged failure to insist that Ezeagwu provide supporting documentation accounted for Ezeagwu's inability to corroborate his asylum application. The BIA ruled that Ezeagwu neither complied with any of the three requirements for an ineffective assistance claim as set forth in *Matter of Lozada*,

19 I & N Dec. 636 (BIA 1988), nor demonstrated how he was prejudiced by his counsel's performance. Ezeagwu now petitions for review.

## II.

Ezeagwu seeks review of the BIA's decision concerning his request for withholding of removal and for relief under the CAT. He does not challenge the BIA's decision that his application for asylum was untimely. We review the decisions on withholding of removal and the CAT under a substantial evidence standard. *Singh v. Gonzales*, 495 F.3d 553, 558 (8th Cir. 2007). "We will reverse only if the petitioner demonstrates that the evidence is so compelling that no reasonable factfinder could fail to find in favor of the petitioner." *Bernal-Rendon v. Gonzales*, 419 F.3d 877, 880 (8th Cir. 2005). Administrative findings of fact, including findings on credibility, are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Singh v. Gonzales*, 495 F.3d 553, 556 (8th Cir. 2007). There is no presumption that an alien's testimony is credible, and an IJ, considering the totality of the circumstances, may base a credibility determination on the inherent plausibility of the applicant's account, the consistency between the applicant's written and oral statements, and any inaccuracies or falsehoods in an applicant's statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim. 8 U.S.C. § 1158(b)(1)(B)(iii).

To qualify for withholding of removal under 8 U.S.C. § 1231(b)(3), an applicant must demonstrate a "clear probability" that "his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.16(b). An applicant meets the requisite standard if he or she shows past persecution based on one of the protected grounds (thus creating a rebuttable

presumption of a future threat to life of freedom), or that future persecution "is more likely than not" to occur if the applicant is forced to return to his or her home country. 8 C.F.R. § 1208.16(b)(1), (2); *Mouawad v. Gonzales*, 485 F.3d 405, 411-12 (8th Cir. 2007). An alien seeking relief under the Convention Against Torture must demonstrate that "it is more likely than not that he or she would be tortured if returned to the proposed country of removal." 8 C.F.R. § 208.16(b).

Substantial evidence supports the BIA's decision denying Ezeagwu's application for withholding of removal. The BIA upheld the IJ's finding that Ezeagwu's testimony alleging past persecution was not credible. The discrepancies between Ezeagwu's written affidavit and his oral testimony are a legitimate basis on which to base a credibility finding, and the fact that Ezeagwu "forgot" to mention his detention and abuse at the hands of the SSS and then later confused the dates of his detention further supports a reasonable determination that he was not credible. It also was permissible for the BIA to conclude that Ezeagwu's failure to provide corroborating evidence, without a satisfactory explanation as to why he could not obtain such evidence, further supported the IJ's determination that Ezeagwu's claim lacked credibility. *See* 8 U.S.C. § 1158(b)(1)(B)(ii); *Gebresadik v. Gonzales*, 491 F.3d 846, 850-51 (8th Cir. 2007). We therefore conclude that substantial evidence supports the IJ's adverse credibility finding, and that the record does not compel the conclusion that Ezeagwu is entitled to withholding of removal.

The adverse credibility finding also justifies the BIA's denial of Ezeagwu's claim for relief under the CAT. No separate analysis is required here, because Ezeagwu's claim is based entirely on the testimony he provided in conjunction with his claim for withholding of removal under § 1231(b)(3). *See Alemu v. Gonzales*, 403 F.3d 572, 576 (8th Cir. 2005).

With respect to the BIA's analysis of Ezeagwu's allegation that his counsel provided ineffective assistance, Ezeagwu contends that the BIA's failure to evaluate

his claim violated his due process rights. The BIA did evaluate Ezeagwu's claim based on its precedent in *Matter of Lozada*, however, and simply found that Ezeagwu failed to satisfy the requirements for relief. We see no basis to conclude that the summary nature of the BIA's discussion of that claim violated Ezeagwu's rights under the Due Process Clause. *See also Habchy v. Gonzales*, 471 F.3d 858, 866 (8th Cir. 2006) (observing that this court has "squarely rejected an absolute constitutional right to effective assistance of counsel with respect to asylum claims").

Finally, Ezeagwu submitted new evidence to this court with his petition for review, and he urges that we remand the case to the BIA for further consideration of his claims in light of this new evidence. He relies on 28 U.S.C. § 2347(c), which provides generally that a party petitioning for review of an order of a federal agency may apply for leave to adduce additional evidence before the agency. The statute governing judicial review of orders of removal, however, now specifies that "the court may not order the taking of additional evidence under section 2347(c) of Title 28." 8 U.S.C. § 1252(a)(1); *see Xiao Xing Ni v. Gonzales*, 494 F.3d 260, 265 (2d Cir. 2007) (observing that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 "explicitly revoked our authority to remand to the BIA for the taking of additional evidence pursuant to § 2347(c)"). We therefore reject Ezeagwu's contention that the case should be remanded to the BIA pursuant to that statute.

For the foregoing reasons, the petition is denied.

_____