**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2770
_____

XUE JIN CHEN,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A098-596-558)
Immigration Judge: Honorable Eugene Pugliese

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 14, 2010

Before: AMBRO, CHAGARES and ALIDSERT, <u>Circuit</u> <u>Judges</u>

(Opinion filed: May 20, 2010)

_____

OPINION
_____

PER CURIAM

     Petitioner Xue Jin Chen seeks review of the Board of Immigration Appeals'

("BIA") final order of removal.  In its order, the BIA affirmed the Immigration Judge's

("IJ") decision to deny Chen's application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We will deny the petition.

I.

Chen is a native and citizen of China who lived in Fujian Province. She entered the United States without inspection in December 2004 and was subsequently charged with removability under INA § 212(a)(6)(A)(i). In October 2005, Chen applied for asylum, withholding of removal, and relief under the CAT claiming that she experienced past persecution and fears future persecution on account of China's family planning policy.[1]

At the administrative hearing, Chen testified that she first became pregnant in China in January 2001, at age eighteen. She was not married to the father of the child, Oyung Sing Hi ("Oyung") at the time. After Chen discovered she was pregnant, she went to Oyung's house to hide. Chen testified that she stayed there until March 2001, when government officials arrived to check their identities. Upon inspection, the officials discovered that she was not from that community.

Chen testified that officials then took her to the local birth control office and performed tests on her, which revealed that she was pregnant. The officials then took Chen to a hospital where an abortion was performed against her will. After the abortion, Chen claimed that the officials warned her that if she got pregnant again, she would be

---

[1]Chen filed a second asylum application in November 2006.

subject to sterilization. Chen testified that after the abortion, she continued to live with Oyung and that they planned to marry in May 2004. On the morning of May 11, 2004, Chen and Oyung had a traditional marriage celebration at Chen's house and then attempted to register their marriage. Chen and Oyung were not able to register for marriage that day, as a physical exam of Chen was first required. During the examination the following day, officials discovered that Chen was pregnant. Chen testified that birth control officials arrived shortly thereafter and performed an abortion against her will and decreed that she could not get married or become pregnant for two years. Although the officials did not require that she be subject to IUD insertion at that time, on cross-examination Chen testified that they came looking for her on three separate occasions in an attempt to take her for sterilization.

Approximately three months later, Chen left China without Oyung; they no longer have a relationship. In May 2006, while in the United States, Chen married and later gave birth to a son. Chen testified that she fears returning to China because she wants to have more children and China only allows one child. Furthermore, she believes she would be subject to sterilization and would be forced to undergo an abortion should she become pregnant.

In an October 2007 opinion, the IJ denied Chen's application for asylum, withholding of removal and CAT protection, finding that Chen failed to offer any meaningful corroborating evidence to support her claims. In addition, the IJ found that

3

there were unexplained inconsistencies between Chen's hearing testimony and her asylum application, which undermined her credibility. Chen appealed the decision and, in May 2009, the BIA dismissed her appeal. The BIA agreed with the IJ that Chen failed to provide "reasonably available corroborative evidence" in support of her application for asylum. (A.R. 4.) The BIA also agreed with the IJ's adverse credibility ruling, finding that there were "valid material omissions" between Chen's hearing testimony and her asylum applications. (Id. at 3.) Chen filed a timely petition for review.

II.

This Court has authority to review final orders of removal. See 8 U.S.C. § 1252(a). "[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). We review factual findings, including adverse credibility determinations, for substantial evidence. See Butt v. Gonzales, 429 F.3d 430, 433 (3d Cir. 2005). An adverse credibility finding must be upheld "unless any reasonable adjudicator would be compelled to conclude to the contrary." Berishaj v. Ashcroft, 378 F.3d 314, 322 (3d Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)).

Because Chen filed her application for relief after the enactment of the REAL ID Act of 2005, the BIA's credibility determinations are governed by the Act. See Chukwu v. Att'y Gen., 484 F.3d 185, 189 (3d Cir. 2007). Under the REAL ID Act, an IJ may base

4

his credibility determination on observations of the applicant's demeanor, the plausibility of the applicant's story, and on the consistency of the applicant's statements. See INA § 208(b)(1)(B)(iii); Gabuniya v. Att'y Gen., 463 F.3d 316, 322 n.7 (3d Cir. 2006).

The IJ found Chen's testimony incredible, particularly because it was not consistent with her asylum application. Upon review of the record, we find the BIA's adverse credibility determination to be supported by substantial evidence. Butt, 429 F.3d at 433. As mentioned, Chen testified that family planning officials allegedly threatened her with sterilization three times after her alleged second forced abortion. (A.R. 136-37.) Chen further testified that she desires to have more children, which she could not do if sterilized. (Id. at 130.) We agree with the BIA that these prior threats of sterilization are central to Chen's asylum claim and that her failure to include them in her asylum application is significant and undermines her credibility.[2]

Moreover, Chen did not provide a plausible explanation for the omissions. At the hearing, Chen stated the reason she did not include the incidents in her application was

_____

[2]While acknowledging the REAL ID Act credibility standard, Chen appears to argue that this Court should apply the pre-REAL ID Act credibility standard as set out in Secaida-Rosales v. INS, 331 F.3d 297 (2d Cir. 2003), a pre-REAL ID Act case. (Pet. Br. 9-10.) Chen also cites Kadia v. Gonzales, 501 F.3d 817, 821-22 (7th Cir. 2007), to support her argument that omissions must be considered in the totality of the circumstances. (Pet. Br. 10-11.) Kadia is also a pre-REAL ID Act case, and the Seventh Circuit explained that, under the REAL ID Act, an immigration judge should not base an adverse credibility decision on minor inconsistencies or "discredit otherwise persuasive testimony because of a misspelling in the asylum application." Kadia, 501 F.3d at 822. However, we agree with the BIA that Chen's omissions are not minor and that they go to the heart of her claims.

5

because she felt that she "[did] not have to write too detailed. It might be too complicated." (A.R. 137.) In her brief, Chen argues that the omissions were "not unreasonable" because she anticipated testifying in greater detail at the hearing. (Pet. Br. at 9.) Such explanations do not compel a different result and are therefore insufficient to overcome the BIA's adverse credibility determination. See e.g., Ezeagwu v. Mukasey, 537 F.3d 836, 839-40 (8th Cir. 2008) (upholding adverse credibility finding where petitioner "forgot" to mention his detention and abuse); Chen, 376 F.3d at 222 ("We are required to sustain an adverse credibility determination 'unless . . . no reasonable person' would have found the applicant incredible." (citation omitted))

In addition to making an adverse credibility finding, the BIA also concluded that Chen failed to meet her burden of proof based on the absence of reasonably available corroborating evidence. The IJ and BIA may expect reasonable corroboration of a claim. Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001). An applicant's failure to corroborate may undermine her case if: (1) the facts at issue are facts for which corroboration may reasonably be expected; (2) the applicant failed to corroborate those facts; and (3) the applicant has not adequately explained her failure to do so. Id. We find the BIA's determination that Chen failed to provide sufficient corroborating evidence is supported by the record.

Although Chen testified that her parents and brother are aware of her experiences in China, neither provided a letter or affidavit in support of her claims. We agree that it

6

was reasonable for the BIA to have expected corroboration from Chen in the form of letters or affidavits from family members who are familiar with the events underlying her asylum application.

We further agree with the BIA that Chen's explanations for failing to submit corroborating evidence with her asylum application are inadequate. When asked by the IJ why she did not procure a letter from her brother, Chen replied, "it is just easier to talk on the phone." (A.R. at 134.) When asked why her parents did not send a letter corroborating her testimony, she stated that they "always communicate by phone" and that they "don't know how to write Chinese." (Id. at 133.) Although we recognize that it may have been difficult for Chen to have immediately obtained letters from family members still living in China, a period of two years passed between Chen's first appearance and her merits hearing. Thus, it was not unreasonable to expect Chen to have procured letters from family members during that time, specifically since Chen admitted that she is in regular contact by telephone with her parents and brother. Accordingly, we find that the BIA's determination is supported by substantial evidence.[3]

---

[3]In her brief, Chen points to an abortion certificate she placed in the record as corroboration of her testimony. (Pet. Br. at 10, 11.) However, the 2005 China Profile of Asylum Claims and Country Conditions, placed in the record by the IJ without objection, states that documents appearing to be abortion certificates are documents "issued by hospitals upon a patient's request after a voluntary abortion" and are used in support of requests for sick leave following an abortion. (A.R. 119-20, 171.) Thus, the certificate alone does not compel the conclusion that Chen, who was underage when she had the alleged abortions, was subject to an involuntary abortion. See Chen v. Gonzales, 434 F.3d 212, 218-19 (3d Cir. 2005).

7

Because Chen did not meet her burden of proof as to her asylum claim, her claim for withholding of removal necessarily fails, as does her claim for protection under the CAT.  See Yu v. Att'y Gen., 513 F.3d 346, 349 (3d Cir. 2008).  Accordingly, we will deny the petition for review.