# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2799

_____

| | | |
|---|---|---|
| Saron Fesehaye, also known as Ruth Balay, | * * * | |
| Petitioner, | * * | |
| | * | On Petition for Review of an |
| v. | * | Order of the Board of |
| | * | Immigration Appeals. |
| Eric H. Holder, Jr., Attorney General of the United States, | * * | |
| | * | |
| Respondent. | * | |

_____

Submitted: May 13, 2010
Filed: June 4, 2010

_____

Before RILEY, Chief Judge, LOKEN and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Petitioner Saron Fesehaye sought asylum, withholding of removal and protection under the Convention against Torture (CAT). The Immigration Judge (IJ) denied all three claims and was affirmed by the Board of Immigration Appeals (BIA). Fesehaye seeks review, arguing that the IJ and the BIA erred in denying the relief she seeks. We deny the petition.

Fesehaye testified that she is an Ethiopian native of Eritrean nationality. She entered the United States in 2005 from the Netherlands after her application for

asylum there had been denied. She entered this country using a Dutch passport in the name of Ruth Balay. She then timely applied for asylum, withholding of removal, and relief under the CAT. Fesehaye conceded removability.

An immigration hearing was held before the IJ in March 2007. Fesehaye testified at the hearing that she was born in Addis Ababa, Ethiopia in 1985 to Eritrean parents. She was baptized into her father's Ethiopian Orthodox church. Feseyahe testified that at age five she underwent female genital mutilation (FGM) at the request of her father. She explained that the procedure was very painful and that she continues to suffer physical and emotional side effects as a result of her FGM.

Fesehaye testified that her family lived in Addis Ababa until 1991, when Eritrea won provisional independence from the Ethiopian government. Her family then moved to Asmara, Eritrea, where they lived for three years. Fesehaye testified that her family returned to Addis Ababa in 1994 because her mother's Jehovah's Witness faith precluded her from voting in the Eritrean independence referendum and not voting would have placed her mother at risk of persecution from the Eritrean government. Fesehaye testified that after returning to Ethiopia, she frequently witnessed police officers arrest and assault innocent Eritreans.

After her father passed away in 1996 due to illness, Fesehaye converted to her mother's Jehovah's Witness faith. In 1998 the border dispute between Ethiopia and Eritrea resurfaced, and Fesehaye testified that violence against Eritreans living in Ethiopia increased at that time. She stated that in June 1999, at age fourteen, she returned home one evening to discover her mother missing. She went to the police station to try to find her mother, but the police did not provide any help. Fesehaye alleged that she became upset and called the officers a "derogatory name" and that the officers responded by taping her mouth, tying her hands, physically assaulting her, and keeping her incarcerated for two days. Fesehaye testified that she was released when her uncle discovered her incarceration and paid for her release.

-2-

After staying with her uncle's friend for several months, Fesehaye fled to the Netherlands in October 1999. She immediately sought refugee status. Fesehaye was interviewed by immigration officials twice in the Netherlands. She was denied Dutch asylum in December 2004. Fesehaye testified before the IJ that she then attempted to get an Ethiopian passport, but was denied because she is Eritrean. She alleged that thereafter she was denied an Eritrean passport because she could not provide documentation showing she had voted for Eritrean independence in 1993. Fesehaye testified that she then purchased the false Dutch passport in the name of Ruth Balay and fled to the United States. Fesehaye stated during her hearing that she cannot return to Eritrea because the government will not allow her to practice her religion, and she fears she will be killed or incarcerated because of her Jehovah's Witness faith.

The IJ found Fesehaye not credible. She "lacked objective, credible documents" regarding her identity, nationality, and ethnicity. There were numerous inconsistencies between her testimony during her immigration hearing and her Dutch asylum application. Fesehaye's Dutch asylum application stated that her mother had been kidnapped in the middle of the night three days before Fesehaye left Ethiopia, not that Fesehaye returned home to find her mother missing several months before she left the country. The Dutch application also described how Fesehaye went to the police station to seek help in finding her mother, but it did not contain any mention that she was detained or abused by police officers. In addition Fesehaye listed the same Addis Ababa address in both asylum applications, but a Dutch investigation reported that the neighborhood or kebele where she claimed to have resided did not exist.

The IJ determined that based upon the adverse credibility finding and lack of corroboration, Fesehaye could not establish her identity, nationality, ethnicity, or citizenship. She thus had "failed to show a well-founded fear of persecution" based on a protected ground "that is subjectively genuine and objectively reasonable." The IJ concluded that Fesehaye was not eligible for asylum, withholding of removal, or

CAT protection. The BIA adopted and affirmed the IJ's decision due to the "striking inconsistencies" between Fesehaye's Dutch and current asylum claims. Fesehaye petitions for review of the BIA's decision.

Both immigration decisions will be reviewed together whenever "the BIA adopts and affirms the IJ's decision, but also adds reasoning of its own." Chen v. Mukasey, 510 F.3d 797, 800 (8th Cir. 2007). We will affirm the decisions if they are supported by substantial evidence, and will reverse "only if the petitioner demonstrates that the evidence is so compelling that no reasonable factfinder could fail to find in favor of the petitioner." Bernal-Rendon v. Gonzales, 419 F.3d 877, 880 (8th Cir. 2005).

Under our immigration law, "[t]he Attorney General has discretion to grant asylum to a refugee, defined as an alien who is unable or unwilling to return to her home country because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Onsongo v. Gonzales, 457 F.3d 849, 852 (8th Cir.2006). An asylum applicant "must establish that one of the five protected grounds was or will be at least one central reason" for the persecution. Averianova v. Mukasey, 509 F.3d 890, 895 (8th Cir. 2007) (citing 8 U.S.C. § 1158(b)(1)(B)(I)).

An asylum applicant "bears the burden of satisfying the IJ that her testimony is credible." Averianova, 509 F.3d at 895 (citing 8 U.S.C. § 1158(b)(1)(B)(ii)). Administrative findings of fact, including credibility determinations, are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4); Singh v. Gonzales, 495 F.3d 553, 556 (8th Cir. 2007). An applicant for asylum will not succeed "regardless of the reason for the alleged persecution" when there has been both "an adverse credibility finding and a lack of corroborating evidence." Averianova, 509 F.3d at 895; Sivakaran v. Ashcroft, 368 F.3d 1028, 1029 (8th Cir. 2004).

-4-

Fesehaye argues that the BIA erred in affirming the IJ's adverse credibility determination because it was not supported by substantial evidence. The IJ based its adverse credibility finding largely on a number of inconsistencies between Fesehaye's Dutch asylum application and her subsequent United States application. The applications contained significantly different descriptions about her mother's alleged abduction, about the treatment Fesehaye received from authorities when she sought help finding her mother at the police station, about the location of her birth, and about the periods of time she lived in Ethiopia as opposed to Eritrea. The IJ also noted that the record reflected that the neighborhood Fesehaye claimed to have resided in does not exist.

Fesehaye offers several explanations for the inconsistencies between her asylum applications.[1] She first states that the Ethiopian translator at her first Dutch asylum interview was biased against her and as a result did not accurately translate her statements. She does not explain why she did not correct the allegedly inaccurate statements at her second asylum interview where she had an Eritrean translator. Fesehaye also states that the Dutch immigration officials misunderstood the description of her mother's alleged kidnapping. She asserts that she was merely describing how people were often taken in the middle of the night and that she was not saying her mother was kidnapped in that manner. With respect to her unverified address, Fesehaye states that house numbers were frequently handwritten in Ethiopia and as a result are difficult to verify.

Even if the cumulation of Fesehaye's explanations could plausibly account for the significant inconsistencies in her asylum applications, the IJ did not err by rejecting them. Rafiyev v. Mukasey, 536 F.3d 853, 857 (8th Cir. 2008). The IJ "is

_____

[1]Fesehaye also asserts that the BIA and the IJ erred by relying on a "foreign asylum application" to challenge her credibility. Because Fesehaye did not raise this argument before the IJ or BIA, we may not consider it. Manani v. Filip, 552 F.3d 894, 901 (8th Cir. 2009); Ateka v. Ashcroft, 384 F.3d 954, 957 (8th Cir. 2004).

in the best position to make credibility findings because [she] sees the witness as the testimony is given." Gemechu v. Ashcroft, 387 F.3d 944, 947 (8th Cir. 2004). For that reason, we defer to an IJ's credibility determination where, as here, it is supported by "specific, cogent reasons for disbelief." Onsongo v. Gonzales, 457 F.3d 849, 852 (8th Cir. 2006).

Fesehaye also argues that the IJ and the BIA failed to take into account the fact that she was fourteen years old at the time of her Dutch application. Fesehaye remained in the Netherlands until age twenty, however. During the intervening time, she had the assistance of an attorney and a social worker. As the IJ noted, Fesehaye had several opportunities and the assistance of advocates to correct what she now describes as errors and misunderstandings in her Dutch asylum application. She did not correct the alleged errors, and in fact the IJ observed that Fesehaye instead added more detail to her account of her mother's nighttime abduction. Considering the duration and circumstances of Fesehaye's immigration process in the Netherlands, we cannot conclude that the IJ and BIA did not sufficiently consider the impact of Fesehaye's age at the time of her initial asylum interview.

In light of the discrepencies in Fesehaye's asylum applications and testimony, the IJ was entitled to require corroborating evidence of her alleged identity as an Eritrean national. Esaka v. Ashcroft, 397 F.3d 1105, 1110 (8th Cir. 2005). Feseyahe speaks Tigrinya, the primary language of Eritrea. She provided an affidavit of an individual who stated that he had lived by her family in Addis Ababa and knew Fesehaye to be Eritrean. She also submitted a baptismal certificate although the document stated nothing with respect to her nationality.

The IJ found this corroborating evidence insufficient to overcome the significant discrepancies between Fesehaye's asylum applications and her testimony. We cannot say that the BIA erred in affirming the IJ's determination in this respect. Rather, our review of the record shows that the IJ gave an adequate explanation for

the adverse credibility determination, that the determination was supported by substantial evidence, and that a reasonable adjudicator would not be compelled to reach a contrary conclusion. Singh, 495 F.3d at 557–58.

Fesehaye also argues that the BIA and the IJ erred by denying her request for asylum despite uncontested evidence that she had undergone FGM. In Hassan, this court held that FGM "rises to the level of persecution within the meaning of our asylum law." Hassan v. Gonzales, 484 F.3d 513, 517 (8th Cir. 2007). The Hassan court clearly expressed, however, that "[i]n addition to showing past persecution, [an applicant] must also show that this persecution is 'on account of' her membership in one of five protected categories." Hassan, 484 F.3d at 518; Averianova, 509 F.3d at 895 (denying petition for review where asylum applicants had failed to "establish that one of the five protected grounds" was the basis for their persecution).

Here the IJ concluded that although Fesehaye had submitted uncontested evidence that she had undergone FGM, she had failed to provide objective, credible evidence of her nationality, ethnicity, or citizenship. She could not establish that she was Eritrean or Ethiopian or that she was not Ruth Balay, the name on her Dutch passport. In light of the adverse credibility findings and the lack of corroborating evidence to establish her identity, Fesehaye could not satisfy her burden of proof to show that the FGM she says was performed at her Ethiopian Orthodox father's request occurred "on account of her membership" in a protected category, Hassan, 484 F.3d at 518, and thus her asylum claim necessarily fails. Sivakaran, 368 F.3d at 1029; Sheikh v. Gonzales, 427 F.3d 1077, 1081–82 (8th Cir. 2005) (affirming denial of asylum where petitioner "failed to establish that the harm . . . suffered . . . was on account of a protected ground").

Finally, Fesehaye argues that the BIA clearly erred by failing to separately consider and analyze her claim for protection under the CAT. Where an adverse credibility finding justifies the denial of an application for asylum and withholding of

removal, that finding also justifies the denial of a claim for relief under the CAT. Ezeagwu v. Mukasey, 537 F.3d 836, 840 (8th Cir. 2008). "No separate analysis is required" where, as here, the claim for protection under the CAT is based on the same testimony as that underlying the petitioner's claims for asylum and withholding of removal. Id.

For the foregoing reasons, we deny Fesehaye's petition for review.

_____