# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2084

_____

| | |
|---|---|
| Hafza H. Hassan, | * |
| | * |
| Petitioner, | * |
| | * Petition for Review of a |
| v. | * Final Decision of the Board |
| | * of Immigration Appeals. |
| Alberto Gonzales, Attorney General | * |
| of the United States, | * |
| | * |
| Respondent. | * |

_____

Submitted: February 12, 2007
Filed: May 7, 2007

_____

Before WOLLMAN, SMITH, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Hafza H. Hassan, a native and citizen of Somalia, petitions for review of an order of the Board of Immigration Appeals (BIA) affirming an immigration judge's (IJ) denial of her application for asylum. We grant the petition and remand the case to the BIA for further proceedings.

I. *Background*

Hassan entered the United States in 1997. That same year, she applied for asylum in Atlanta, Georgia, claiming that if returned to Somalia, her interclan marriage to Abdullah Mohamed Kulmiye, a member of the Midgan tribe, would

subject her to persecution by members of her own clan, the Hawiye. The IJ rejected this claim but granted Hassan asylum after concluding, *sua sponte*, that if Hassan were returned, her American-born daughters would be forced to move to Somalia and undergo female genital mutilation (FGM). The government appealed and the BIA remanded for further factual findings.

On remand, venue was changed to Minnesota, where Hassan petitioned for asylum stating three grounds: (1) her interclan marriage to Kulmiye would subject her to persecution; (2) her own FGM experience entitled her to asylum and (3) her daughters would be subject to FGM if they returned with her. To support her FGM claim, Hassan produced a letter from a physician asserting that Hassan had undergone FGM; her own testimony detailing her FGM experience at age six; and a Department of State report noting that 98% of women in Somalia had undergone FGM.

The IJ concluded that (1) her interclan marriage claim lacked credibility; (2) Hassan had undergone FGM but was not entitled to asylum based upon her experience; and (3) if Hassan were returned, her daughters could remain in the United States with Kulmiye, their father and a United States asylee. The BIA affirmed. Hassan appeals her two FGM-based asylum claims.

## II. *Discussion*

We review de novo the BIA's conclusions of law but give substantial deference to its interpretations of statutes and regulations. *Habtemicael v. Ashcroft*, 370 F.3d 774, 779 (8th Cir. 2004). A denial of asylum is reviewed for abuse of discretion; underlying factual findings are reviewed for substantial support in the record. *Manivong v. Dist. Dir., United States Dep't of Justice INS*, 164 F.3d 432, 433 (8th Cir. 1999). An IJ's factual determinations must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole. *Tang v. INS*, 223 F.3d 713, 718 (8th Cir. 2000). "[This] standard is a deferential one, requiring a reviewing court to uphold a denial of asylum unless an alien demonstrates that the

evidence he presented was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." *Nyama v. Ashcroft*, 357 F.3d 812, 816 (8th Cir. 2004) (internal quotations and citations omitted).

## A. *Fugitive Disentitlement Doctrine*

Preliminarily, we address the government's claim that Hassan has waived her asylum claim under the fugitive disentitlement doctrine. The BIA permitted Hassan to depart voluntarily from the United States. She did so within the required 30-day time frame, moving with her children to Canada. From Canada, Hassan requested a stay of deportation. Because Hassan failed to meet with government officials to discuss her request, the government asserts that she thus waived her claim.

The fugitive disentitlement doctrine is an extreme sanction that permits a court to waive an appellant's right to appeal if the appellant fails to appear before a relevant tribunal. *Degen v. United States*, 517 U.S. 820, 828 (1996). Disentitlement serves two purposes: "[it] punishes those who evade the reach of the law and thus discourages recourse to flight" and it avoids making judgments that could not be enforced should the government prevail. *Antonio-Martinez v. INS*, 317 F.3d 1089, 1091 (9th Cir. 2003).

We decline to apply the doctrine here. Hassan's leaving the country is not analogous to a fleeing felon avoiding prosecution. Hassan apparently left the country in compliance with the IJ's and the BIA's order to leave the country within 30 days. The record does not show Hassan's voluntary departure was an attempt to evade the reach of the law. Her pursuit of additional legal remedies while in Canada does not frustrate the execution of our judgment should the government prevail. We therefore reject the government's waiver argument.

B. *Asylum*

To obtain asylum, an applicant must demonstrate a well-founded fear of persecution on account of her race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). An asylum applicant may establish a well-founded fear of persecution by showing that the applicant was persecuted in the past. *Eta-Ndu v. Gonzales*, 411 F.3d 977, 983 (8th Cir. 2005). Once an applicant demonstrates past persecution, she is entitled to a presumption of a well-founded fear of persecution. 8 C.F.R. § 1208.13(b)(1)."The burden then shifts to the government to show by a preponderance of the evidence that conditions in the applicant's country have changed to such an extent that the applicant no longer has a well founded fear of being persecuted if he or she were to return." *Vonhm v. Gonzales*, 454 F.3d 825, 828 (8th Cir. 2006).

1. *Past Persecution*

Hassan contends that she possesses a well-founded fear of persecution based upon her past FGM experience .The government argues that Hassan failed to prove that she suffered from past persecution. The government concedes that Hassan has undergone FGM[1] but avers that this court has never held that a petitioner who has

---

[1]Experts divide FGM into three categories. The record indicates that Hassan underwent Type III FGM, a conclusion that is consistent with State Department reports noting that Type III is the most prevalent form of FGM in Somalia. See *Report on Female Genital Mutilation as Required by Conference Report* (H.Rept.106-997) to Pub.L. 106-429 (Foreign Operations, Export Financing and Related Programs Appropriations Act, 2001); *see also Female Genital Mutilation, Integrating the Prevention and the Management of the Health Complications into the curricula of nursing and midwifery. A Teacher's Guide*. World Health Organization. (2001).

Type III FGM is by far the most invasive and painful form of the procedure. A young woman, usually between the ages of four and twelve, is restrained as an old woman or local barber slices the girl's clitoris, labia minora and labia majora with knives, razors, scissors, shards of glass or sharp stone. *Teachers Guide* at 31; *Conference Report* at 5. Anaesthesia, especially in rural areas, is rarely given and

undergone FGM is entitled to a presumption of past persecution as a matter of law. The government is correct. However, we now join the growing number of our sister circuits that have considered this issue and concluded that there is "no doubt that the range of procedures collectively known as female genital mutilation rises to the level of persecution within the meaning of our asylum law." *Mohammed v. Gonzales*, 400 F.3d 785, 795 (9th Cir. 2005); *see also Barry v. Gonzales*, 445 F.3d 741, 745 (4th Cir. 2006) (holding that "we recognize as an initial matter that FGM constitutes persecution within the meaning of the Immigration and Nationality Act"); *Niang v. Gonzales*, 422 F.3d 1187, 1197 (10th Cir. 2005) (holding that "FGM constitutes persecution, whether for the purpose of determining past persecution or the purpose of determining well-founded fear of persecution"); *Abay v. Ashcroft*, 368 F.3d 634, 638 (6th Cir. 2004) (holding that "[f]orced female genital mutilation involves the infliction of grave harm constituting persecution . . . that can form the basis of a successful claim for asylum"); *Balogun v. Ashcroft*, 374 F.3d 492, 499 (7th Cir. 2004)

---

depending upon the sharpness of the instruments and the girl's resistence, the procedure may take up to 20 minutes to complete. *Teachers Guide* at 31; *Conference Report* at 5. In many instances, the instruments used to perform the procedure are not sterilized. *Conference Report* at 5.

Once the cutting has concluded, the old woman or barber will remove the amputated flesh and stitch the vaginal opening together, "leaving a very small opening, about the size of a matchstick, to allow for the flow of urine and menstrual blood." *Conference Report* at 5. "Thorns may be used for pricking the prepuce and for holding the labia together." *Teachers Guide* at 31. To stop the risk of infection, the wound is "dabbed with anything from alcohol or lemon juice to ash, herb mixtures, porridge, coconut oil or cow dung. . ." *Teachers Guide* at 31. For 40 days, the young woman is immobilized; her legs are bound together from hip to ankle, preventing her from moving so that scar tissue can form along the mutilated vaginal opening. *Conference Report* at 5.

(stating that "[t]he Agency does not dispute, at least with any force, that the type of FGM which Ms. Balogun has alleged is 'persecution'").

In addition to showing past persecution, Hassan must also show that this persecution is "on account of" her membership in one of five protected categories. Hassan argues that her Somali persecution is on account of her gender, a particular social group. In *Safaie v. INS*, 25 F.3d 636 (8th Cir. 1994), we rejected a petitioner's argument that the Iranian government's oppression of women was sufficient to make Iranian women a recognized particular social group. We held that such a categorization was "overbroad, because no factfinder could reasonably conclude that all Iranian women had a well-founded fear of persecution based solely on their gender." *Id.* at 640. Here, however, we hold that a factfinder could reasonably conclude that all Somali females have a well-founded fear of persecution based solely on gender given the prevalence of FGM. As the Ninth Circuit noted in *Mohammed*, "there is little question that genital mutilation occurs to a particular individual because she is a female. That is, possession of the immutable trait of being female is a motivating factor–if not a but-for cause-of the persecution. "*Mohammed*, 400 F.3d at 797. We, therefore, conclude that Hassan was persecuted on account of her membership in a particular social group, Somali females.

The BIA acknowledged, and the government does not dispute, that Hassan, a Somali woman, underwent FGM as a child. Accordingly, Hassan has satisfied her burden of showing that she suffered previous persecution and is entitled to the presumption that she has a well-founded fear of future persecution.

### 2. *Future Persecution*

Hassan's establishment of past persecution creates a presumption that she also possesses a well-founded fear of future persecution. The proof burden should have then shifted to the government to show by a preponderance of the evidence that conditions in Somalia have changed to such an extent that Hassan's well-founded fear

of future persecution if returned to Somalia has ceased. The record is clear that the BIA failed to shift the burden of proof from Hassan to the government.

The government, however, argues that the case should not be remanded, because the record establishes that Hassan does not have well-founded fear of persecution as she cannot be subjected to FGM a second time. In essence, the government argues that FGM cannot be done to her again so she should not be afraid. The government's argument erroneously assumes that FGM is the only form of persecution in Somalia and that having undergone the procedure, Hassan, as a Somali woman, is no longer at risk of other prevalent forms of persecution. *Ramirez Rivas v. INS,* 899 F.2d 864, 869–70 (9th Cir. 1990). We have never held that a petitioner must fear the repetition of the exact harm that she has suffered in the past. Our definition of persecution is not that narrow. *Pavlovich v. Gonzales*, 476 F.3d 613, 616 (8th Cir. 2007) (defining persecution as "the infliction or threat of death, torture, or injury to one's person or freedom on account of a statutorily protected ground").

The government also argues that the IJ's adverse credibility determination adequately rebuts Hassan's past persecution. However, the IJ's credibility findings only addressed Hassan's interclan marriage claim. Hassan's FGM evidence, which included a letter from a physician, the State Department Report, and her own testimony, were unrebutted. On remand, the government must prove, by a preponderance of the evidence, that conditions in Somalia have changed to such an extent that Hassan no longer has a well-founded fear of the infliction or threat of death, torture, or injury to her person or freedom.[2]

---

[2]We note that, in this case, the government faces a significant challenge. The record before us indicates that Somali women face severe hardships. The 2005 Somalian Report on Human Rights Practices prepared by the Department of State notes that "societal discrimination and violence against women and widespread abuse of children continued to be serious problems." The report states that "[l]aws prohibiting rape exist; however, they generally were not enforced. There were no laws

## C. *Derivative Asylum*

Hassan also argues that she is entitled to asylum based upon her well-founded fear that her daughters would be persecuted. The IJ rejected Hassan's argument without analysis believing that Hassan's children could remain in the United States with their father Kulmiye. After the IJ issued his decision, the government reopened Kulmiye's asylum proceedings and terminated his asylum status. He too was ordered removed to Somalia. Given the falsity of the IJ's assumption, we remand Hassan's derivative asylum claim for consideration by the BIA on its merits. *INS v. Orlando Ventura*, 537 U.S. 12 (2002); *Gonzales v. Thomas*, 547 U.S. 183 (2006).

## III. *Conclusion*

For the foregoing reasons, we grant the petition for review and remand the case to the BIA for further proceedings consistent with this opinion.

———————————————

---

against spousal rape. There were no reports that rape cases were prosecuted during the year." *Id.* "Police and militia members raped women, and rape was commonly practiced in inter-clan conflicts." *Id.* "In Somaliland there was an increase in incidents of gang rape in urban areas, primarily by youth gangs, members of police forces and male students." *Id. See also Hernandez-Montiel v. INS*, 225 F.3d 1084, 1097–98 (9th Cir. 2000) (holding that rape by police officers that is ignored by the government constitutes persecution sufficient to establish asylum).