# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3113

_____

Jose F. Guerrero Tejado

*Petitioner*

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 7, 2014
Filed: January 29, 2015
[Published]

_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Jose Guerrero Tejado ("Guerrero") seeks review of a final order from the Board of Immigration Appeals (BIA) affirming an Immigration Judge's (IJ) denial of his applications for cancellation of removal and asylum. We find that the IJ and the BIA properly exercised their discretion in denying Guerrero's applications, and deny Guerrero's petition for review.

I. *Background*

Guerrero, a Honduras native, entered the United States illegally in 1990. For most of his stay in this country, Guerrero has misrepresented himself as a citizen of El Salvador for the advantageous Temporary Protected Status (TPS) allowed to Salvadorans.[1] Guerrero was granted TPS status after submitting an application in which he claimed to be a citizen of El Salvador. When Salvadorans' TPS status was due to expire in 1995, Guerrero applied for asylum,[2] again misrepresenting himself as a Salvadoran by submitting a false Salvadoran birth certificate and alleging he faced potential retribution from the Salvadoran government because he and his father were members of a powerful guerilla unit in the 1980s. After he filed for asylum, Guerrero submitted work authorization requests, which also misrepresented his national origin. In 2001, Guerrero continued to misrepresent himself in an asylum interview that reviewed his 1995 asylum application. The asylum officer, believing Guerrero was Salvadoran, informed Guerrero of the Nicaraguan Adjustment and Central American Relief Act (NACARA), which granted immigration benefits and limits on removals to Salvadorans, among others. *See* Pub. L. 105-100, 111 Stat. 2160. Guerrero did not correct the officer's mistaken belief that Guerrero was Salvadoran. To his credit, Guerrero chose not to apply for NACARA benefits.

---

[1] Salvadorans were granted TPS status pursuant to 8 U.S.C. § 1254a in January 1991. TPS designees can stay in the United States until the conditions in their country are deemed to have improved, and they can obtain work authorization.

[2] Guerrero testified before the IJ that he believed that misrepresenting his nationality for purposes of gaining favorable immigration statuses was legal. Guerrero's naivety should have been dispelled by the time he filed the application for asylum because the lawyer that handled his previous immigration paperwork, Mr. Salas, had been arrested in 1994 on charges of perpetrating fraudulent immigration schemes.

It was not until 2009, 19 years after his entry into this country, that Guerrero revealed his true national origin, and then, not by choice. When Guerrero missed an asylum interview in 2008, the Department of Homeland Security initiated removal proceedings, alleging that Guerrero was present in the United States without inspection and parole by an immigration officer in violation of § 212 of the Immigration and Nationality Act. *See* 8 U.S.C. § 1182(a)(6)(A)(i). In his response, Guerrero admitted his Honduran citizenship and conceded his removability, but he nevertheless filed applications for cancellation of removal and asylum.

The IJ denied Guerrero's applications for cancellation of removal and asylum, finding that he did not merit the favorable exercise of discretion required to obtain these remedies. The IJ further concluded that Guerrero was not legally eligible. First, the IJ exercised her discretion to deny both of Guerrero's applications. The IJ supported her exercise of discretion by citing Guerrero's history of lying in immigration matters, Guerrero's two driving while intoxicated convictions, and his arrest for domestic assault. Second, the IJ determined that Guerrero was not legally eligible for cancellation of removal because Guerrero did not meet his burden of showing that his United States-citizen sons "would suffer exceptional and extremely unusual hardship if [Guerrero] had to leave the United States." Rather, the IJ concluded that Guerrero's sons would suffer "the normal hardships that would go along with family members living in different locations." In addition, the IJ denied Guerrero's application concluding that Guerrero lacked credibility based on Guerrero's 19 years of misrepresenting his national origin. The IJ further noted that even if Guerrero had been credible, she would still have denied relief because Guerrero failed to establish a well-reasoned fear of persecution based on his membership in a social group. The BIA agreed with the IJ and affirmed her decision on all issues.

## II. *Discussion*

Guerrero now appeals to this court, offering several theories of error below. We need only address two: (1) whether this court has jurisdiction to review a discretionary

denial of cancellation of removal, and (2) whether the BIA abused its discretion in denying the application for asylum. The answer to both inquiries is no.

## A. *Denial of Cancellation of Removal*

Cancellation of removal gives the government discretion to permit a deportable alien to lawfully remain in the United States if they meet the requirements in 8 U.S.C. § 1229b(b). Under one provision, Guerrero must establish that his removal "would result in exceptional and extremely unusual hardship to [Guerrero's] . . . child, who is a citizen of the United States." 8 U.S.C. § 1229b(b)(1)(D). When this is established, "the IJ makes a discretionary determination whether the alien merits the relief of cancellation of removal." *Guled v. Mukasey*, 515 F.3d 872, 880 (8th Cir. 2008) (citing 8 U.S.C. § 1229b(b)).

As a threshold matter, we lack jurisdiction to review "any judgment regarding the granting of relief under section . . . 1229b." 8 U.S.C. § 1252(a)(2)(B)(i). Neither can we review "any other decision or action of the Attorney General . . . the authority for which is specified . . . to be in the discretion of the Attorney General." *Id.* at § 1252(a)(2)(B)(ii). Despite the discretionary nature of the relief Guerrero seeks, he contends that his appeal fits within the exception to these rules, which allows us to review "constitutional claims or questions of law" raised on appeal. *Id.* at § 1252(a)(2)(D). "We also possess jurisdiction to review the nondiscretionary determinations underlying a denial of an application for cancellation of removal, such as the predicate legal question whether the IJ properly applied the law to the facts in determining an individual's eligibility." *Gomez-Perez v. Holder*, 569 F.3d 370, 372 (8th Cir. 2009) (quotations and citations omitted).

Guerrero presents two arguments to show his entitlement to cancellation of removal: (1) that the IJ did not consider his son's psychological condition during a previous separation, and (2) that the IJ erred in categorizing the hardship that his family would face as "normal" because of a misapplication of BIA precedent.

Concerning the first argument, Guerrero testified that his youngest son, Kevin, had trouble adjusting without Guerrero present. Kevin has been diagnosed with Adjustment Disorder with Mixed Disturbance of Emotions and Conduct making the separation a greater hardship than normal.

Guerrero's first argument seeks reversal of the IJ's factual evaluation of his claim. We lack the jurisdiction to do so. While Kevin's former condition is unfortunate, the weight that the IJ gave to the impact of Kevin's separation from his father remains outside our jurisdiction because it does not constitute a question of law. Similarly, the applicant in *Guled* "argue[d] the IJ improperly weighed the factors in the proper balancing test," yet we found that we lacked jurisdiction. 515 F.3d at 880; *see also Solis v. Holder*, 647 F.3d 831, 833 (8th Cir. 2011) (denying review when an applicant challenged the BIA's consideration of certain factors because this practically argued that the BIA improperly weighed the factors in the proper balancing test). Practically, this amounts to a disagreement with "the discretionary conclusion of not meriting a favorable exercise of discretion." *Guled*, 515 F.3d at 880. The amount of weight given to particular facts is not a question of law, but it is exactly the type of decision making that Congress intended to prevent the courts from reviewing.

Turning to Guerrero's second argument, Guerrero states that the IJ and the BIA misapplied the legal standard for finding an "exceptional and extremely unusual hardship." Specifically, Guerrero contends that the IJ failed "to meaningfully distinguish between [his] case and *Matter of Recinas*, 23 I&N Dec. 467 (2002)." He contends *Recinas* should have applied and been a basis for relief. This is a question of law and within our jurisdictional ambit. *See Gomez-Perez*, 569 F.3d at 373 (finding that the applicant's argument that an incorrect legal standard applied when the IJ and the BIA "focus[ed] on the present circumstances of [the applicant's] children rather than on the future hardships that they would face if he were removed" was a question of law appropriate for review).

In our view, Guerrero's case is materially distinguishable from *Recinas*. Guerrero's United States-citizen children may remain in this country with their mother. In addition, Guerrero's children are nearly adults, which mitigates the economic burden of losing the financial support Guerrero currently provides. While Guerrero argues that his children would suffer emotionally from his departure, we agree with the IJ that this emotional hardship represents the normal hardship that family members suffer when they live apart. Therefore, the IJ and the BIA did not err in failing to apply *Recinas* to grant relief to Guerrero.

This holding alone is enough to defeat Guerrero's eligibility for cancellation of removal. But, the IJ and the BIA also exercised their discretion to deny Guerrero's application. Guerrero seeks review of that discretionary denial. We decline as "[w]e lack jurisdiction to review the Attorney General's discretionary decision not to grant cancellation of removal" pursuant to 8 U.S.C. § 1252(a)(2)(B)(i), *Hamilton v. Holder*, 680 F.3d 1024, 1026 (8th Cir. 2012).

## B. *Denial of Asylum*

Similar to cancellations of removal, the adjudication of asylum applications is best understood in two parts: (1) determining eligibility; and (2) exercising discretion to grant asylum. *See Farbakhsh v. I.N.S.*, 20 F.3d 877, 881 (8th Cir. 1994); *see also Gulla v. Gonzales*, 498 F.3d 911, 915 (9th Cir. 2007); *Huang v. I.N.S.*, 436 F.3d 89, 94 (2d Cir. 2006). Eligibility depends on the applicant's ability to show that they are a "refugee," meaning that they are a person outside of their country of origin "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). "An asylum applicant who meets the[se] legal standard[s] . . . is only '*eligible* for asylum,' which the Attorney General . . . 'in his [or her] discretion' may grant." *Zuh v. Mukasey*, 547 F.3d 504, 507 (4th Cir.

2008) (fifth alteration in original) (quoting *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 443 (1987)).

We review denials of asylum for an abuse of discretion. *Hassan v. Gonzales*, 484 F.3d 513, 516 (8th Cir. 2007). We will uphold an IJ's factual determinations as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (citation omitted). This is a deferential standard, "requiring a reviewing court to uphold a denial of asylum unless an alien demonstrates that the evidence he presented was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." *Id.* at 516 (quotation and citation omitted). Additionally, the IJ's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).

The IJ found that Guerrero could not establish his asylum eligibility because he was not credible. Guerrero's testimony, the sole evidence presented to prove his "fear of persecution," was thus discounted. After "[c]onsidering the totality of the circumstances, and all relevant factors," an IJ can base such a credibility finding on

> the inherent plausibility of the applicant's . . . account, the consistency between the applicant's . . . written and oral statements . . . , the internal consistency of each such statement, . . . and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii). Further, "[w]hen the BIA has adopted and affirmed the IJ's adverse credibility determination, we defer to those findings if 'supported by specific, cogent reasons for disbelief.'" *R.K.N. v. Holder*, 701 F.3d 535, 538 (8th Cir. 2012) (quoting *Osonowo v. Mukasey*, 521 F.3d 922, 927 (8th Cir. 2008)). Guerrero deceived officials for 19 years concerning his national origin in several immigration

-7-

applications and interviews. On these facts, the IJ and BIA justified their disbelief of his testimony. To be sure, Guerrero's past untruthfulness does not mean he is not telling the truth in his current applications. However, the statute makes clear that falsehoods do not need to go to the heart of the applicant's claim in order to be considered in evaluating credibility. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). As a result, we find no error or abuse of discretion in the IJ's adverse credibility determination or the BIA's affirmation thereof.

While this adverse credibility finding is enough to deny Guerrero's eligibility, both the IJ and the BIA also considered the merits of his eligibility claims, finding that Guerrero did not establish that he had a well-founded fear of persecution "on account of . . . membership in a particular social group." Guerrero argued that he, if returned, would be targeted by criminals and would be subject to assaults and robberies because he would be perceived as wealthy because he lived in the United States for such a long time. Being among those who are perceived as wealthy for having lived in this country, however, is not a recognized social group subject to protection under asylum law. *See Matul-Hernandez v. Holder*, 685 F.3d 707, 712 (8th Cir. 2012) (finding that membership in a group of Guatemalans returning from the United States who would be perceived as wealthy was not a recognized social group that had a well-founded fear of persecution). The IJ and the BIA did not abuse their discretion in denying the asylum application because Guerrero could not meet his burden of establishing his eligibility for asylum.

## III. *Conclusion*

For the foregoing reasons, we deny Guerrero's petition for review of the IJ's and the BIA's denial of Guerrero's applications for cancellation of removal and asylum.

_____