# United States Court of Appeals
### For the Eighth Circuit

_____

## No. 14-2858

_____

Masereh Njie, also known as Masereh Jallow

*Petitioner*

v.

Loretta E. Lynch[1]

*Respondent*

_____

## No. 14-2862

_____

Alieu Sireh Jallow

*Petitioner*

v.

Loretta E. Lynch

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

_____

[1]Loretta E. Lynch is automatically substituted for Eric H. Holder, Jr., pursuant to Federal Rule of Appellate Procedure 43(c)(2).

Submitted: September 22, 2015
Filed: December 11, 2015

_____

Before WOLLMAN, COLLOTON, and KELLY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Masereh Njie and Alieu Sireh Jallow petition for review of the orders of the Board of Immigration Appeals (BIA) affirming the denial of their applications for waiver of inadmissibility and denying their motions to remand. We dismiss the petitions to the extent they seek review of the discretionary decision to deny the applications for waiver. We otherwise deny the petitions.

## I. Background

Njie and Jallow are natives and citizens of the Gambia. They entered the United States in May 2002 and August 2005, respectively. Njie married a United States citizen in December 2005 and divorced him in August 2010. Jallow married a United States citizen in January 2007. His marriage ended in divorce in June 2009. Both Njie and Jallow obtained immigration benefits based on those marriages.

Njie and Jallow met in the United States and entered into a romantic relationship in March or April 2006. They have two children together, ages 8 and 6, both of whom were born in the United States. Njie and Jallow were married in May 2013. For clarity, we will continue to refer to Masereh Jallow by her maiden name, Njie.

In February 2011, the Department of Homeland Security (DHS) initiated separate removal proceedings against Njie and Jallow, alleging that they had attempted to procure immigration benefits through fraud or willful misrepresentation. Njie and Jallow conceded removability and applied for waiver of inadmissibility under section 237(a)(1)(H) of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1227(a)(1)(H).

An immigration judge (IJ) held a hearing, during which he received evidence and heard testimony. He thereafter issued separate written decisions denying Njie's and Jallow's applications for waiver of inadmissibility. The IJ found that Njie and Jallow were not credible witnesses. Moreover, he found that they had entered into sham marriages with United States citizens to gain immigration benefits and that they had denied any wrongdoing, even after being confronted with evidence of their fraudulent conduct. In deciding whether to waive inadmissibility, the IJ also considered Njie and Jallow's positive attributes, including that they had lived in the United States for many years and were rearing two children who were U.S. citizens. Given the totality of the circumstances, however, the IJ concluded that Njie and Jallow had "failed to establish that [they] merit[] section 237(a)(1)(H) waiver[s] in the exercise of discretion." Njie and Jallow appealed the adverse decisions to the BIA.

Njie and Jallow married each other while their appeals were pending. Thereafter, they moved to remand their cases so that they could seek asylum in light of letters they received in January 2014 from relatives living in the Gambia. They argued that the letters constituted newly discovered evidence and that their motions to remand thus met the statutory and regulatory requirements for reopening proceedings. See 8 U.S.C. § 1229a(c)(7)(C); 8 C.F.R. § 1003.2(c). Njie and Jallow submitted the letters, Njie's completed asylum application, and other supporting documentation as exhibits to the motions.

In separate letters, Njie's mother and sister wrote that Njie would be recircumcised if she were to return to the Gambia. The letters stated that clan elders had decided to recircumcise Njie because she had married Jallow, who was from an inferior tribe. Recircumcision would prepare Njie to marry a man from her own tribe, who already had been chosen for her. Njie's asylum application listed Jallow as a derivative beneficiary and stated that Njie would be recircumcised because she had had children with Jallow. Njie reported in a personal statement that she had been subjected to female genital mutilation (FGM) when she was a child. She explained in a letter that she had broken tradition by entering into a relationship with Jallow without the permission of clan elders and that recircumcision would serve as punishment for marrying him. An unsworn, electronically signed medical record stated that Njie had undergone a pelvic exam and that her "[c]litoris [was] not found upon inspection. Prepuce absent. Flattened tissue with small scar like line where anterior labia minora would be expected."

The BIA dismissed the appeals and denied the motions to remand. It affirmed the IJ's denial of the applications for waiver of inadmissibility, stating that "[w]hile the respondent[s'] equitable considerations are substantial, we nonetheless agree with the Immigration Judge that these considerations are outweighed by . . . negative factors and that a favorable exercise of discretion under section 237(a)(1)(H) of the Act is not warranted."[2] The BIA denied the motions to remand on three grounds. It concluded that Njie and Jallow had failed to establish changed circumstances that would allow the IJ to consider Njie's otherwise untimely asylum application. See 8 U.S.C. § 1158(a)(2)(D); 8 C.F.R. § 1208.4(a)(4)(i)(A)-(B). Further, the BIA determined that Njie and Jallow had failed to show that the information set forth in the letters was previously unavailable. See 8 C.F.R. § 1003.2(c)(1). Finally, "[g]iven

---

[2]The IJ also had determined that Njie and Jallow were statutorily ineligible for waiver of inadmissibility. The BIA did not address that determination and instead affirmed the IJ's discretionary denial of the respondents' applications for waiver.

the respondent[s'] lack of credibility and [their] attempts to defraud immigration officials, [the BIA was] unable to conclude that the respondent[s] ha[ve] demonstrated prima facie eligibility for relief to warrant remand." In their consolidated appeal, Njie and Jallow argue that the BIA abused its discretion in dismissing their appeals and in denying their motions to remand.

## II. Discussion

### A. Denial of Waiver of Inadmissibility

An alien who procures a visa, other documentation, or admission into the United States through "fraud or willfully misrepresenting a material fact" is inadmissible. 8 U.S.C. § 1182(a)(6)(C)(i). The Attorney General has discretion to waive this ground of inadmissibility for an alien who "is the spouse, parent, son, or daughter of a citizen of the United States," so long as the alien meets certain requirements. Id. § 1227(a)(1)(H). We lack jurisdiction to review the discretionary denial of waiver of inadmissibility under this provision. See id. §§ 1227(a)(1)(H), 1252(a)(2)(B)(ii). We do, however, have jurisdiction to review constitutional claims or questions of law raised in a petition for judicial review from the denial of waiver. See id. § 1252(a)(2)(D).

Njie and Jallow contend that the IJ required them to show that their removal would cause their children to suffer hardship, even though § 1227(a)(1)(H) does not require such a showing. They claim that this additional requirement constituted an error of law, which the BIA failed to address on appeal. Our review of the IJ's decision reveals that he did not require a hardship showing. Instead, in deciding whether to grant the applications for waiver, the IJ mentioned that Njie and Jallow had not shown that their removal would cause their children to suffer hardship. The IJ weighed this factor, along with several others, when he decided to deny the applications for waiver. Although Njie and Jallow have argued that the IJ committed

legal error, they in effect are challenging the IJ's weighing of the evidence and his subsequent decision that they "failed to establish that [they] merit[] section 237(a)(1)(H) waiver[s]." As explained above, we do not have jurisdiction to review the discretionary denial of waiver of inadmissibility.

## B. Motions To Remand

Njie and Jallow argue that the BIA abused its discretion in denying their motions to remand. See Clifton v. Holder, 598 F.3d 486, 490 (8th Cir. 2010) (standard of review). "[W]here a motion to remand is really in the nature of a motion to reopen or a motion to reconsider, it must comply with the substantive requirements for such motions." Matter of Coelho, 20 I. & N. Dec. 464, 472 (BIA 1992). When Njie and Jallow moved the BIA to remand their cases to the IJ, they sought to reopen their removal proceedings so that the IJ could consider Njie's application for asylum and supporting documentation. Accordingly, they were required to meet the substantive requirements of a motion to reopen proceedings. See id.

A motion to reopen proceedings must "state the new facts that will be proven at a hearing to be held if the motion is granted" and "be supported by affidavits or other evidentiary material." 8 C.F.R. § 1003.2(c)(1). Motions to reopen are disfavored in removal proceedings, "where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." INS v. Doherty, 502 U.S. 314, 323 (1992). Accordingly, the movant bears a heavy burden to establish that proceedings should be reopened. INS v. Abudu, 485 U.S. 94, 110 (1988).

Our review of the BIA's denial of a motion to reopen is deferential. The Supreme Court has recognized "at least three independent grounds on which the BIA may deny a motion to reopen: (1) failure by the movant to establish a prima facie case for the underlying substantive relief sought; (2) failure by the movant to

-6-

introduce previously unavailable, material evidence; or (3) a determination [that] the movant would not be entitled to the discretionary relief sought." Poniman v. Gonzales, 481 F.3d 1008, 1011 (8th Cir. 2007) (citing Abudu, 485 U.S. at 104-05).

Njie and Jallow argue that the BIA erred when it concluded as a threshold matter that Njie's asylum application would be rejected as untimely because of her failure to show changed circumstances that would excuse the one-year deadline for applying for asylum. See 8 U.S.C. § 1158(a)(2)(B), (D). The BIA concluded that Njie and Jallow's marriage constituted merely a change in personal circumstances, not a change in country conditions, and that the marriage "was not a changed circumstance materially affecting the respondent[s'] eligibility for relief." See 8 C.F.R. § 1208.4(a)(4)(i) (defining the term "changed circumstances" as used in 8 U.S.C. § 1158(a)(2)(D)).

There is no real dispute that Njie and Jallow's marriage constitutes a change in personal circumstances. See Zheng v. Mukasey, 523 F.3d 893, 895 (8th Cir. 2008). Njie and Jallow contend, however, that the BIA mischaracterized their argument. They argue that the BIA should have considered the letters from Njie's sister and mother as evidence of changed country conditions and that the letters establish that Njie's tribe had instituted a practice of recircumcising women who marry men from an inferior tribe. This practice, according to Njie and Jallow, constitutes a changed country condition and excuses the one-year time limit for filing an asylum application. Njie and Jallow first raised this argument in their replies to the DHS's opposition to the motions to remand. Accordingly, although we doubt that the BIA erred in considering Njie's asylum application as being based on changed personal circumstances and thus untimely, even if it did, it nonetheless acted within its discretion when it denied the motions to remand on other grounds.

As set forth above, the BIA may deny a motion to reopen if the movant fails to establish a prima facie case for the underlying substantive relief sought. To qualify

for asylum, an applicant must demonstrate that she is unwilling or unable to return to her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Accordingly, an applicant may qualify either because she has suffered past persecution or because she has a well-founded fear of future persecution. A well-founded fear of future persecution must be both subjectively genuine and objectively reasonable. Feleke v. INS, 118 F.3d 594, 598 (8th Cir. 1997). Both components must be proved by credible evidence: "Subjectively, the alien must demonstrate with credible evidence that [s]he genuinely fears persecution; objectively, [s]he must demonstrate through credible, direct, and specific evidence that a reasonable person in [her] position would fear persecution." Id.

Njie and Jallow argue that the letters from Njie's mother and sister establish Njie's well-founded fear of future persecution. The BIA did not abuse its discretion in rejecting that argument, however, "[g]iven respondent[s'] lack of credibility and [their] attempts to defraud immigration officials." The IJ found that Njie and Jallow had omitted material information and submitted false information to obtain immigration benefits; that they had altered lease documents to corroborate their sham marriages to U.S. citizens; that they "continued to disavow any wrongdoing in the face of . . . obvious fraud"; and that Njie had made false statements under oath during the naturalization process. In light of the extent of their marriage fraud scheme, the frequency with which Njie and Jallow submitted untruthful information, and their history of forging documents, the BIA did not abuse its discretion in requiring more than unsworn letters from Njie's family members to establish Njie's prima facie eligibility for asylum.

Njie and Jallow argued in their reply brief and at oral argument that the BIA is not permitted to impute the adverse credibility finding from their removal proceedings to the evidence in support of Njie's asylum application. They contend

that, under <u>Hassan v. Gonzales</u>, 484 F.3d 513 (8th Cir. 2007), credibility issues are treated differently in cases involving FGM and that their cases must be remanded so that the IJ can determine whether Njie has established a well-founded fear of recircumcision. We disagree.

In <u>Hassan</u>, the petitioner sought asylum, claiming that she would be subjected to persecution because she had married a man from a different tribe and that she was entitled to asylum because she previously had been subjected to FGM. <u>Id.</u> at 515. The IJ concluded that the petitioner's interclan marriage claim lacked credibility and that the petitioner was not entitled to asylum based upon the fact that she had undergone FGM. <u>Id.</u> at 515-16. On appeal, we held that a petitioner who has undergone FGM is entitled to a presumption of past persecution, and we rejected the government's argument that the IJ's adverse credibility finding on the interclan marriage claim rebutted this presumption. <u>Id.</u> at 517-18. Because the petitioner's evidence regarding FGM was unrebutted, we remanded the case for further proceedings. <u>Id.</u> at 518-19.

<u>Hassan</u> involved a direct appeal from the denial of an asylum application that alleged a well-founded fear of persecution based upon the petitioner's past FGM experience. This case, however, involves an appeal from the denial of motions to remand to have removal proceedings reopened. The asylum claim alleged in these motions was not based on Njie's past persecution. Indeed, the BIA would have denied such motions for failure to present previously unavailable, material evidence. <u>See</u> 8 C.F.R. § 1003.2(c)(1) (stating that a motion to reopen will not be granted unless the evidence "was not available and could not have been discovered or presented at the former hearing"); <u>see also id.</u> (stating that a motion to reopen shall not be granted for the purpose of allowing the alien to apply for discretionary relief, like asylum, if it appears that the petitioner had notice and an opportunity to apply at the previous hearing, "unless the relief is sought on the basis of circumstances that have arisen subsequent to the hearing"). Instead, Njie and Jallow have based the asylum claim

on fear of future persecution, arguing that "[t]he evidence provided in the letters . . . confirms a new tribal practice of re-circumcision . . . and therefore establishes a *prima facie* case for asylum." Appellants' Br. 25. Although "[a]n adverse credibility finding on one claim does not necessarily defeat other claims," R.K.N. v. Holder, 701 F.3d 535, 538 (8th Cir. 2012), Hassan does not require reversal here, where the case stands in a much different procedural posture and the asylum claim is based on different grounds. Because Njie and Jallow engaged in an extensive fraudulent scheme, the BIA did not abuse its discretion in determining that the evidence they presented was not credible and thus did not establish Njie's prima facie eligibility for asylum.

Finally, we find no abuse of discretion in the BIA's determination that the information contained in the letters was not previously unavailable. Although Njie and Jallow may not have received the letters until January 2014, they failed to show that the alleged tribal practice of recircumcision "could not by the exercise of due diligence have been discovered earlier." Matter of Coelho, 20 I.& N. Dec. at 474 n.4 (quoting Taylor v. Illinois, 484 U.S. 400, 414 n.18 (1988)).

### III. Conclusion

We dismiss the petitions to the extent they seek review of the discretionary decision to deny the applications for waiver. We otherwise deny the petitions.

_____