# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-3559

_____

Sintia Yolissa Rodriguez-Mercado

*Petitioner*

v.

Loretta E. Lynch, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: September 22, 2015
Filed: December 23, 2015

_____

Before LOKEN, BENTON, and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

Sintia Yolissa Rodriguez-Mercado, a citizen of Honduras, petitions for judicial review of a final order of the Board of Immigration Appeals ("BIA") denying her application for asylum, withholding of removal, and protection under the Convention Against Torture. Rodriguez-Mercado challenges the Immigration Judge's ("IJ's") adverse credibility finding and alleges that the BIA failed to consider whether country conditions independently established her eligibility for asylum relief. She has also

moved to remand her case to the BIA to consider whether she is eligible for voluntary departure. We deny the petition for review and the motion to remand.

## I.

Rodriguez-Mercado is eligible for asylum if the Attorney General determines that she is a "refugee," defined as a person who is unwilling to return to her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A). A protected ground must be "at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(I); see Ortiz-Puentes v. Holder, 662 F.3d 481, 483 (8th Cir. 2011). Rodriguez-Mercado alleges that repeated domestic violence by her former partner was persecution on account of her membership in a particular social group, namely, "Honduran women who are viewed as property by virtue of their positions within a domestic relationship and who are unable to leave the relationship." When private persons committed the alleged persecution, as in this case, the asylum petitioner must establish that the assaults "were either condoned by the government or were committed by private actors that the government was unwilling or unable to control." Osuji v. Holder, 657 F.3d 719, 721-22 (8th Cir. 2011) (quotation omitted).

An immigration officer interviewed Rodriguez-Mercado after she entered the United States without inspection near Rio Grande City, Texas, on May 9, 2010. Rodriguez-Mercado admitted that she entered illegally, claimed she was seeking employment in Virginia, and said she did not fear returning to Honduras. However, when the Department of Homeland Security served a Notice to Appear that commenced removal proceedings, she applied for asylum, withholding of removal, and protection under the Convention Against Torture. Rodriguez-Mercado testified at a credible-fear interview before an immigration officer that she fled Honduras because her former partner and father of her child, Juan Carlos Izaguirre, repeatedly

-2-

beat and raped her while they were living together, and she feared for her personal safety if she returned to Honduras.

Rodriguez-Mercado testified at length at the July 2012 asylum hearing. The IJ found that her testimony was not credible, that inconsistencies in the testimony "go to the heart of her asylum claim," and that two "crucial" corroborating documents were fabricated. Though Rodriguez-Mercado also submitted documents establishing that domestic violence is widespread in Honduras, the IJ found that "none of these documents are sufficiently detailed, relevant, or persuasive enough to rectify [her] incredible testimony or otherwise establish that she meets the definition of a refugee." The IJ denied the application and ordered Rodriguez-Mercado removed, also ruling that she was ineligible for voluntary departure because she had not been in the United States for one year before being served the Notice to Appear. See 8 U.S.C. § 1229c(b)(1)(A).

Rodriguez-Mercado appealed the removal order to the BIA but did not appeal denial of voluntary departure. The BIA dismissed the appeal in a written decision. Upholding the IJ's adverse credibility finding, the BIA concluded:

> We concur with the [IJ's] conclusion that the respondent failed to sustain her burden of proof to establish past persecution or a well-founded fear of future persecution in Honduras, on account of any of the grounds enumerated in the Act, in light of the fact that she failed to provide credible testimony in support of her claim.

Rodriguez-Mercado petitions for judicial review of this final order of removal. See 8 U.S.C. § 1252(a)(5). When the BIA adopts the IJ's findings of fact but adds its own reasoning, we review the agency's fact-finding in both decisions for substantial evidence. Ali v. Holder, 686 F.3d 534, 538 (8th Cir. 2012). "Administrative findings of fact, including credibility determinations, are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Fesehaye v. Holder,

607 F.3d 523, 526 (8th Cir. 2010) (quotation omitted); see 8 U.S.C. § 1252(b)(4)(B). We may reverse the BIA's determination that Rodriguez-Mercado was not eligible for asylum "only if the evidence [she] presented . . . was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacharias, 502 U.S. 478, 481 (1992). "We review questions of law *de novo* and accord substantial deference to the BIA's interpretation of immigration law and agency regulations." Zheng v. Holder, 698 F.3d 710, 713 (8th Cir. 2012) (quotation omitted).

## II.

Rodriguez-Mercado argues that substantial evidence does not support the IJ's adverse credibility finding. "When the BIA has adopted and affirmed the IJ's adverse credibility determination, we defer to those findings if supported by specific, cogent reasons for disbelief." R.K.N. v. Holder, 701 F.3d 535, 538 (8th Cir. 2012), quoting Osonowo v. Mukasey, 521 F.3d 922, 927 (8th Cir. 2008).

At the hearing, Rodriguez-Mercado testified that Izaguirre would hit her when he came home drunk and high. He became more abusive after she became pregnant, and on three occasions he came home drunk and high and raped her. She reported him to the police on one occasion, but the police did nothing. Izaguirre told her he "gave them money so they wouldn't do anything to him." He refused to take her to the hospital to have the baby and tried to prevent family members from taking her. When the baby was two months old, Rodriguez-Mercado left Izaguirre and moved in with her sister three hours away. Izaguirre found her, and Rodriguez-Mercado returned to live with him because, "I was afraid that he was going to take my son from me and that he would do something to me" because "he was a very violent person." One year later, she left her son with her mother and fled to the United States. If she returned to Honduras, Izaguirre would find her because it is a small country, and the police would not protect her because he gives them money.

After cross examination by DHS counsel and questioning by the IJ, the IJ found that Rodriguez-Mercado's testimony and asylum application lacked detail and contained multiple material omissions and inconsistencies, some of which were central to her claim: (i) Rodriguez-Mercado's hearing testimony contradicted her asylum application as to when the abuse started, the actions of Izaguirre and her mother and sister on the day she went to the hospital, and whether Izaguirre raped her "almost every time that he would come home drunk and high," or only three times. (ii) The hearing testimony contradicted her statement to the border patrol that she had never been harmed in Honduras and came to the United States to seek work.  (iii) Rodriguez-Mercado admitted providing two false corroborating documents -- a letter from a "neighbor" who "witnessed when [Izaguirre] beat her" but was written by Rodriguez-Mercado's aunt who lived three hours away, and a letter from a woman who went with Rodriguez-Mercado to the police station stating that Izaguirre "on various occasions in front of me, threatened to kill her, battered and mistreated her physically," when in fact the woman was not a neighbor and never witnessed Izaguirre abusing Rodriguez-Mercado.  The IJ further found that Rodriguez-Mercado, when provided an opportunity to explain, "testified in an evasive and unresponsive manner."  Based on these inconsistencies, the IJ found her not credible.

The BIA reviewed the adverse credibility finding for clear error, see 8 C.F.R. § 1003.1(d)(3)(I), and concluded that the IJ "supported his adverse credibility finding with specific and cogent reasons based on the record."  Accordingly, the BIA agreed that Rodriguez-Mercado failed to sustain her burden to prove past or future persecution "in light of the fact that she failed to provide credible testimony in support of her claim."  After careful review of the record, we agree.  The numerous contradictions and inconsistencies went to the heart of Rodriguez-Mercado's claim -- the extent and duration of Izaguirre's alleged persecution, whether the persecution was on account of her membership in a particular social group (as opposed to his controlled substance addictions), and whether the Honduran police were unable or unwilling to control persecution by this private actor.  As in Tebyasa v. Holder, 593

-5-

F.3d 707, 711 (8th Cir. 2010), Rodriguez-Mercado's "numerous inconsistencies, some going to the heart of the claim, provide a specific, cogent reason to disbelieve [her] claim of persecution."

Rodriguez-Mercado argues the IJ erred by failing to evaluate her testimony in light of the effects of sexual abuse. She relies on a 1995 internal Department of Justice Memorandum to INS Asylum Officers explaining that victims of sexual abuse often have trouble speaking about their experiences and these difficulties can make the victim appear to be lying or cause memory loss. However, immigration judges are not required to follow the Memorandum's recommended interviewing techniques. See Zewdie v. Ashcroft, 381 F.3d 804, 809 n.7 (8th Cir. 2004). Moreover, Rodriguez-Mercado did not fail to disclose alleged sexual abuse. The relevant inconsistency was telling a border patrol officer when she first arrived in this country that she was here to seek work in Virginia and had no fear of returning to Honduras. This inconsistency suggested a willingness to overstate alleged abuse to support her claim for asylum relief. When asked to explain the inconsistencies, Rodriguez-Mercado never hinted they were due to fear, embarrassment, or memory issues.

Rodriguez-Mercado further argues that the IJ impermissibly "shroud[ed] his decision" by basing it on demeanor. Like the BIA, we disagree. Congress has expressly declared that an IJ "may base a credibility determination on the demeanor . . . of the applicant or witness." 8 U.S.C. § 1158 (b)(1)(B)(iii). Here, after carefully explaining the many inconsistencies in Rodriguez-Mercado's hearing testimony and prior interviews, the IJ noted that she "often testified in an evasive and non-responsive manner, especially when asked to explain the discrepancies between her testimony in court and her sworn statement to [the border patrol]." This was a proper use of demeanor to buttress an analysis that, as the BIA explained, satisfied the IJ's obligation to provide specific and cogent reasons based on the record.

## III.

Rodriguez-Mercado next contends, relying heavily on <u>Hassan v. Gonzales</u>, 484 F.3d 513 (8th Cir. 2007), that the BIA erred by basing its decision on the IJ's adverse credibility finding without considering whether her evidence of Honduran country conditions, without more, was sufficient to establish that she is eligible for relief.

In <u>Hassan</u>, we reviewed the denial of asylum to a petitioner who was found incredible as to one claim, but who also provided unrefuted evidence that she had suffered female genital mutilation ("FGM") in Somalia, her country of origin. <u>Id.</u> at 515-18. Based on a Department of State report that 98% of women in Somalia had undergone FGM, we concluded that forced FGM is persecution on account of membership in the particular social group of Somali females. <u>Hassan</u>, 484 F.3d at 515, 518. Thus, Hassan established past persecution, and the government failed to show changed country conditions that would rebut the presumption of a well-founded fear of future persecution. <u>Id.</u> at 518-19.

By contrast, in this case Rodriguez-Mercado's lack of credibility meant that she failed to prove past persecution. Moreover, as the IJ and BIA found, she failed to present credible evidence that she was a "refugee" -- a person (i) who was persecuted, (ii) on account of her membership in a particular social group, and (iii) by a private actor the government of Honduras was unable or unwilling to control. The IJ specifically considered Rodriguez-Mercado's country conditions evidence and concluded that it was not "sufficiently detailed, relevant, or persuasive enough to rectify [Rodriguez-Mercado's] incredible testimony or otherwise establish that she meets the definition of a refugee." Because Rodriguez-Mercado failed to establish that she was a refugee under 8 U.S.C. § 1101(a)(42), the IJ and BIA denied her application for asylum, withholding of removal, and CAT relief. There was no error.

## IV.

Rodriguez-Mercado moved to remand the case to the BIA so that she may seek voluntary departure from the United States. <u>See</u> 8 U.S.C. § 1229c(b). She accompanied the motion with recent materials that we may not consider because they are outside the administrative record on appeal. In her appeal to the BIA, Rodriguez-Mercado did not challenge the IJ's denial of voluntary departure. "When an issue is abandoned before the BIA, it is not preserved for our review." <u>Nyonzele v. INS</u>, 83 F.3d 975, 984 (8th Cir. 1996). Moreover, only the Attorney General has authority to grant the discretionary statutory benefit of voluntary departure. <u>Rife v. Ashcroft</u>, 374 F.3d 606, 615 (8th Cir. 2004). Accordingly, we deny the motion to remand. We of course do not address whether Rodriguez-Mercado may be eligible for voluntary departure or other relief from the agency.

We deny the petition for review and the motion to remand.

_____