NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 20-1486

---

ROSBELINDA GUTIERREZ-HERNANDEZ,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA

---

On Petition for Review of a Final Order
of the Board of Immigration Appeals
(No. A73-641-233)

---

Submitted Under Third Circuit L.A.R. 34.1(a)
September 25, 2020

Before: AMBRO, PORTER and ROTH, Circuit Judges

(Opinion filed: February 23, 2021)

OPINION[*]

AMBRO, Circuit Judge,

Petitioner Rosbelinda Gutierrez-Hernandez seeks our review of the denial by the Board of Immigration Appeals ("BIA") of her motion to reopen removal proceedings. We deny in part and dismiss in part her petition for review.

**I.**

Gutierrez-Hernandez, a native of Guatemala, had several harrowing experiences with violence in her home village. First, in 1992 Gutierrez-Hernandez's neighbors found the body of a young woman lying in the street; she had been choked to death. Second, in 1993 gang members killed one of Gutierrez-Hernandez's male neighbors who ran a currency-exchange business. Third, shortly after the neighbor's murder, two gang members attacked Gutierrez-Hernandez in her home. They held Gutierrez-Hernandez at gunpoint, demanded money, beat her, and threatened to rape and kill her.

After these experiences, Gutierrez-Hernandez entered the United States in 1994. Eight years later, the BIA ordered her removal. During removal proceedings Gutierrez-Hernandez sought asylum and withholding of removal on the ground that she had opposed violent Guatemalan guerilla fighters. The BIA denied her relief.

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Fast forward to 2019, when Gutierrez-Hernandez filed a motion to reopen her removal proceedings under 8 U.S.C. § 1229a(c)(7); she also requested that the BIA exercise its authority to reopen *sua sponte* the proceedings under 8 C.F.R. § 1003.2(a). She again sought asylum and withholding of removal, plus withholding under the Convention Against Torture ("CAT"). As to her asylum and withholding-of-removal claims, Gutierrez-Hernandez sought protection as a member of the particular social group of "Guatemalan women." However, the BIA denied the motion to reopen and declined to exercise its authority *sua sponte*. She now petitions us for review, arguing she is entitled to either asylum or withholding relief.[1] Gutierrez-Hernandez cites her previous experiences with violence, as well as her male cousin's recent murder by gang members, as evidence that it is not safe for her to return to Guatemala.

## II.

### A. Statutory Motion to Reopen

We have jurisdiction to review the BIA's denial of a statutory motion to reopen under 8 U.S.C. § 1252(a). *Alzaarir v. Att'y Gen.*, 639 F.3d 86, 89 (3d Cir. 2011). We review denials of statutory motions to reopen for abuse of discretion. *Zheng v. Att'y Gen.*, 549 F.3d 260, 264–65 (3d Cir. 2008). Under this standard, denials of motions to reopen "will not be disturbed unless they are found to be arbitrary, irrational, or contrary to law."

[1] Gutierrez-Hernandez also renews her CAT claim here. However, her briefing fails to explain how the BIA erred in its CAT analysis. Gutierrez-Hernandez does not argue, for example, that she would be subjected to torture upon return to Guatemala or that the Guatemalan government would acquiesce in or be willfully blind to her torture. We therefore deny her petition for review of that claim.

*Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004) (quoting *Tipu v. INS*, 20 F.3d 580, 582 (3d Cir. 1994)).

Generally, a motion to reopen "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R. § 1003.2(c)(2). Here, Gutierrez-Hernandez filed her motion to reopen seventeen years after the BIA entered its final order of removal. However,

> [t]here is no time limit on the filing of a motion to reopen if the basis of the motion is to apply for [asylum or withholding of removal] and [the motion] is based on changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding.

8 U.S.C. § 1229a(c)(7)(C)(ii). Gutierrez-Hernandez argues, among other things, she presented sufficient evidence to the BIA that conditions have materially changed in Guatemala since her previous proceeding.

But a showing of changed country conditions is not enough to prevail on a statutory motion to reopen—the motion must also establish *prima facie* eligibility for the relief sought. *Guo*, 386 F.3d at 563. This standard requires an applicant to demonstrate a "reasonable likelihood," or a "realistic chance," she is entitled to relief. *Id.* at 563–64 (internal quotations marks omitted). Because Gutierrez-Hernandez seeks protection as part of a particular social group, her asylum and withholding claims require her to establish (1) "a particular social group that is legally cognizable" and (2) "a nexus, or causal link, between the persecution and membership in the particular social group." *S.E.R.L. v. Att'y Gen.*, 894 F.3d 535, 544 (3d Cir. 2018).

To constitute a particular social group, a group must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Id.* at 540 (quoting *In re M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014)). We ordinarily give a fresh review for the BIA's legal determination of the existence of a cognizable social group. *Guzman Orellana v. Att'y Gen.*, 956 F.3d 171, 177 (3d Cir. 2020). But here, because this is a motion to reopen, we apply the more rigorous abuse-of-discretion standard in deciding whether the BIA erred in denying the motion. *See, e.g.*, *Khan v. Att'y Gen.*, 691 F.3d 488, 498–99 (3d Cir. 2012) (concluding, after a discussion of the BIA's social-group analysis, that the BIA did not abuse its discretion in denying a motion to reopen on that ground). We review its factual findings related to the motion for "substantial evidence." *Filja v. Gonzales*, 447 F.3d 241, 251 (3d Cir. 2006).

We are unpersuaded that the BIA abused its discretion here. First, we doubt that Gutierrez-Hernandez's proposed social group of "Guatemalan women" is legally cognizable. The Eighth Circuit has held that "Somali women" constitute a cognizable social group. *Hassan v. Gonzales*, 484 F.3d 513, 518 (8th Cir. 2007). However, that case involved an applicant who had suffered female genital mutilation. *Id.* The Court held that "a factfinder could reasonably conclude that all Somali females have a well-founded fear of persecution based solely on gender given the prevalence of [female genital mutilation]." *Id.* The Court contrasted its holding with that of the Court in *Safaie v. INS*, 25 F.3d 636 (8th Cir. 1994), which held that "Iranian women" did not constitute a cognizable social group despite evidence that the Iranian government specifically oppressed women. *Id.* at

640. The Court reasoned that the applicant in that case had not shown that all Iranian women were persecuted "based solely on their gender." *Id.* Our Court followed a similar line of reasoning in *Fatin v. INS*, 12 F.3d 1233 (3d Cir. 1993), concluding that "Iranian women" were not a particular social group because the applicant did not establish she would be persecuted "based solely on her gender." *Id.* at 1240–41.

We acknowledge that circuits are divided over whether proposed groups of women with other identifying characteristics qualify as particular social groups. *See, e.g.*, *De Pena-Paniagua v. Barr*, 957 F.3d 88, 92 (1st Cir. 2020) (recognizing that "Dominican women unable to leave a relationship with the man who abuses them" could constitute a particular social group); *Paloka v. Holder*, 762 F.3d 191, 197 (2d Cir. 2014) (collecting cases). The Ninth Circuit has also held that the group of "Guatemalan women" meets the particularity requirement in the social-group analysis. *See Perdomo v. Holder*, 611 F.3d 662, 668–69 (9th Cir. 2010) (rejecting the BIA's conclusion that the group of "Guatemalan women" was overly broad and remanding for the BIA to reconsider whether the group met other prongs of the cognizability test). But other than *Hassan* with its very different facts, Gutierrez-Hernandez does not cite any published circuit-level authority recognizing groups as broad as all women of a particular nationality. The BIA therefore did not abuse its discretion in denying Gutierrez-Hernandez's motion to reopen on this ground.

There is also a second, independent ground for concluding that the BIA did not abuse its discretion here: Gutierrez-Hernandez has not shown "a nexus, or causal link, between the persecution and membership in the particular social group" of Guatemalan women. *S.E.R.L.*, 894 F.3d at 544. "We review the BIA's denial of a motion to reopen for

abuse of discretion and review its underlying factual findings related to the motion for substantial evidence." *Filja*, 447 F.3d at 251 (citations omitted). "We will reverse only if the evidence not only supports [a contrary] conclusion, but compels it." *Guo*, 386 F.3d at 561 (alteration in original) (internal quotation marks omitted). Here, the BIA found that Gutierrez-Hernandez's evidence "does not support the contention that [she] would specifically be targeted" because of her membership in a particular social group. A.R. 4. It acknowledged her evidence of pervasive violence in Guatemala but concluded the evidence did not support Gutierrez-Hernandez's assertion that she personally would be targeted because of membership in a protected class. *Id.*

The record underscores this finding. Gutierrez-Hernandez herself testified she would be targeted for gang violence in Guatemala because the gangs would "believe [her] to have lots of money." A.R. 81. While she noted that "women are considered less than men" in Guatemala, she primarily testified that gangs "go after people for money." *Id.* Moreover, two of the incidents Gutierrez-Hernandez cites to support her fear of violence involved only male victims.

The record does reflect that violence against women is rampant in Guatemala as a whole and that Guatemalan gang violence also includes some gender-based violence, such as sex trafficking. But this violence looks much more like the violence against Iranian women at the hands of a generally oppressive regime, *see Fatin*, 12 F.3d at 1240–41, than the specific, gendered violence of female genital mutilation in *Hassan*. Because the evidence does not "compel" a contrary conclusion, we cannot disturb the BIA's finding that Gutierrez-Hernandez failed to establish a causal link between her membership in a

protected class (Guatemalan women) and her feared harm (violence from gangs). *See Guo*, 386 F.3d at 561.

In short, Gutierrez-Hernandez does not have a "realistic chance" of being entitled to relief. *Id.* at 563–64. She has not established a reasonable likelihood that she is a member of a particular social group or that she will be persecuted because of her membership in that group. The BIA therefore did not abuse its discretion in denying Gutierrez-Hernandez's motion to reopen.[2] *See Zheng*, 549 F.3d at 264–65.

**B. Motion to Reopen *Sua Sponte***

Gutierrez-Hernandez also petitions for our review of the BIA's denial of her motion to reopen *sua sponte* under 8 C.F.R. § 1003.2(a). However, because the BIA's discretion in this context is "essentially unlimited," we do not have jurisdiction to review its denial order and thus dismiss the petition as to this issue. *Sang Goo Park v. Att'y Gen.*, 846 F.3d 645, 651 (3d Cir. 2017). Gutierrez-Hernandez's cited authorities are not on point. *See, e.g.*, *Mata v. Lynch*, 576 U.S. 143 (2015) (holding that, when the BIA denies a statutory motion to reopen *and* declines to exercise its *sua sponte* reopening power, the circuit court retains jurisdiction over the statutory motion to reopen).

In her reply brief, Gutierrez-Hernandez makes a cursory argument that her case meets one of two narrow exceptions to this jurisdictional bar. Because she did not make

[2] Gutierrez-Hernandez also argues that the BIA misapplied the "reasonable likelihood" standard by requiring her to meet "the higher standard needed to be granted asylum on the merits rather than the lower *prima facie* case standard." Pet'r's Br. 25. But the BIA's decision here repeatedly acknowledges that Gutierrez-Hernandez needed only to establish a *prima facie* case, and she fails to explain how this purported error affected the BIA's analysis.

this argument in her opening brief, the argument is forfeited. *See Barna v. Bd. of Sch. Dirs.*, 877 F.3d 136, 145 (3d Cir. 2017) ("We have long recognized, consistent with Federal Rule of Appellate Procedure 28(a) and Third Circuit Local Appellate Rule 28.1, that an appellant's opening brief must set forth and address each argument the appellant wishes to pursue in an appeal.").

* * * * *

We thus deny in part and dismiss in part Gutierrez-Hernandez's petition for review.